### Castillo v. McBeath.

(Decided January 27, 1915.)

## Appeal from Wayne Circuit Court.

1. Mortgages—Deed Absolute on its Face—Parol Evidence.—In the absence of an allegation of fraud or mistake, parol testimony is admissible to show that a deed absolute on its face was executed to secure a debt, and is therefore a mortgage.

2. Mortgages—When Conveyance Declared Mortgage—Doubt.—When a doubt exists as to whether a conveyance is a deed or a mortgage, that doubt will be resolved in favor of the debtor, and the conveyance construed to be a mortgage.

3. Mortgages—Deed—Construction—Evidence.—A mortgagor of a two-ninths interest in a tract of land, being unable to pay the debt when due, executed to the mortgagee a deed conveying the absolute title to all of the land, and at the same time executed a collateral agreement providing for the redemption of the land within six months upon payment of the debt and interest, the mortgagor remaining in possession. Held, under the evidence, that the chancellor properly adjudged the deed a mortgage.

J. M. KENNEDY for appellant.

W. R. CRESS & SON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On February 22, 1911, Jordon McBeath, a colored man about seventy years of age, borrowed from the Monticello Banking Company the sum of $39.46, and executed his note therefor with H. C. Kennedy as surety. In order to indemnify Kennedy, Jordon McBeath and wife executed to him a mortgage conveying a two-fifths interest in a tract of land containing about seventy acres. As Jordon McBeath owned only a two-ninths interest in the tract of land, it is claimed that his interest was described as two-fifths by mistake. When the note in question became due Kennedy executed his personal note to the bank and took up the old note, signed by himself and McBeath. When the new note matured, Kennedy paid it. On June 26, 1912, Kennedy went to the home of Jordon McBeath and procured from him and his wife a deed conveying their two-ninths interest in the land to Kennedy and quitclaiming any interest as to the remainder. At the same time Kennedy executed a collateral agreement by which he bound himself to convey

to Jordon McBeath, or to any of his children, the tract of land, provided Jordon or any of his children repaid to him within six months from the date of the deed the sum of $39.31, with six per cent. interest. The collateral agreement further provided that no difference who should redeem the tract of land, Kittie McBeath, the wife of Jordon, should have the right to keep the same as a home during her natural life, unless she should abandon the place, and Kennedy bound himself, in the event of the repayment to him of the sum above specified, to make a deed in accordance with that agreement. Shortly after the conveyance in question Jordon McBeath died, leaving a widow and five children. The land not being redeemed prior to the expiration of the six months provided in the collateral agreement, Kennedy conveyed the land to his father-in-law, Mike Castillo, who knew of the circumstances under 'which Kennedy acquired title.

Castillo brought this action in ejectment against Henry McBeath, one of Jordon's children, to recover the land in question, and set out in his petition the above proceedings by which he obtained title. The defendant pleaded mental incapacity on the part of Jordon McBeath, inadequacy of consideration, and that the deed was intended only as a mortgage. He also pleaded a tender within six months of the consideration expressed in the deed. On final hearing, the chancellor adjudged the deed to be a mortgage, and denied plaintiff the relief prayed for. Plaintiff appeals.

A great deal of evidence was heard on the question of tender, but, in view of the conclusion of the court, we deem it unnecessary to consider that question, or any question other than the effect of the conveyance. Jordon McBeath and his wife lived on the land in controversy, which is located about four miles from the town of Monticello. Jordon was not in good health, and Judge Kennedy, fearing that his interest in the land would not be sufficient to cover the debt on which he was surety, together with the costs of the action, rode out to Jordon's home for the purpose of getting him to execute the deed. The deed and collateral agreement had been prepared. Judge Kennedy says that Jordon's mind was in no way affected, and he was in full possession of his mental powers. The deed and collateral agreement were read to Jordon and his wife. Jordon

suggested that another clause be added, providing that, no difference who redeemed the land, his wife Kittie should have the right to keep it during her lifetime. The closing line commencing with the words "Witness my hand, etc.," was then erased and the clause in question added. During this time the defendant, Henry McBeath, was some distance away. At no time during the conversation did he say that the deed was a mere mortgage. He fully explained to the parties that it was a deed, and that they were given six months more time within which to redeem the land. It was no inducement whatever for him to take another mortgage, as he already had one on the property. He never at any time said anything to the parties or led them to believe that the deed was a mortgage. He took the acknowledgment himself. This occurred on the 26th day of June. Two days later he took up the note at the bank and gave his note in lieu thereof, payable in six months. This note was subsequently paid. There is further evidence to the effect that Jordon McBeath's wife vacated the premises soon after she was notified that Castillo had purchased them. It is also shown that after the six months elapsed defendant, Henry McBeath, came to Castillo and said that he had come to hear his doom.

Kittie McBeath, Jordon's widow, says that when Judge Kennedy came he said the instrument was a mortgage. At that time Jordon was in bad health, and his mind was "waivery." Did not know whether he had a mind sufficient to realize and understand the nature and effect of the papers he was signing or not. Did not know that she had deeded the place away. Judge Kennedy said he did not want the place, and would give them a chance to pay for it. When Mr. Castillo bought the place she moved off. It was just a few days after the six months expired. She gave up the place because she thought it was his. The defendant, Henry McBeath, testified that at the time the deed was executed Jordon's condition was not good. Jordon could read print and write a little. Judge Kennedy said he would give them six months to pay in. He did not want the home; all he wanted was his money. It was the understanding of all present that the mortgage was to be prolonged for six months. Jay McBeath, another son of Jordon, testified that he was present when the deed was executed. Judge Kennedy said it was a mortgage. He further said it

was in his power to set Jordon out of doors, but, as they had always been good friends, he was willing to fix it up so they would have six months more time. His father was very feeble at the time and died a few days later.

Though a contrary view was announced in Munford v. Green's Admr., 103 Ky., 140, 44 S. W., 419, that case has been overruled and it is now the settled rule in this state that without an allegation of fraud or mistake parol testimony is admissible to show that a deed absolute on its face was executed to secure a debt, and is, therefore, a mortgage. Hobbs v. Rowland, 136 Ky., 197, 123 S. W., 1185; McKibben v. Diltz, 138 Ky., 684.

The appellant relies on the case of Tygret v. Potter & Co., 97 Ky., 54. There Tygret, being indebted to Potter & Co. in the some of $4,242, executed to them a mortgage covering about 150 acres of land, to secure the debt, which was represented by a note payable twelve months from date. When the note became due, Tygert was unable to pay it. Thereupon he executed to Potter & Co. a deed conveying the land covered by the mortgage, and at the same time he received from them a collateral agreement by which they undertook to reconvey the land to him on the payment of the sum of $4,678.60, the consideration expressed in the deed, together with interest thereon up to the time of payment. It was held that inasmuch as Potter & Co. already had a mortgage on the entire premises conveyed at the time the deed was executed, there could have been no motive prompting the parties to so change the terms of a writing that upon its face was plainly a mortgage unless they both intended the conveyance to pass the fee in the event the debt was not paid within twelve months. For this reason the conveyance was adjudged a conditional sale, instead of a mortgage. Other circumstances that induced this conclusion on the part of the court are stated as follows:

"The evidence of the debt had been surrendered and there is no evidence conducing to show the land to be of greater value than that paid for it, or that the agreement was unconscionable or oppressive, but, on the contrary, it is manifest the appellant saw or believed he could not discharge or release the mortgage, and therefore made the best possible terms with his creditors."

The difference between that case and this is as follows: Kennedy was surety for Jordon McBeath on a

note amounting to $39.31. He had a mortgage covering a two-fifths interest in the seventy acres of land, and it is admitted that the words "two-fifths" were used instead of the words "two-ninths." The deed which Kennedy took not only conveys, with covenant of general warranty, the two-ninths interest covered by the mortgage, but in addition thereto grants, quit claims and turns over the possession of the remaining seven-ninths interest in said tract of land, and, as to this part, the grantors warrant the title against themselves, their heirs and assigns only. It is true that Jordon McBeath had deeds to only two-ninths of the tract. There is evidence, however, tending to show that the remaining interests had been given to him, or he had title bonds therefor. Certain it is that he had been living on the land for about 35 years. The whole land is worth at least $200, and probably as much as $400. At the time the deed was executed Kennedy had not paid the note at the bank. He executed the new note on December 28th. Th old note on which he was surety was never surrendered to Jordon McBeath. Even if we accept Judge Kennedy's statements as true, that he never mentioned the word "mortgage," he practically admits that he told the grantors that he wanted to give them six months more in which to redeem the land. His only motive for taking the deed could not have been merely to secure a deed for that to which he already had a mortgage, if, as a matter of fact, he acquired all the title that the grantors had in the land in controversy. The consideration expressed in the deed was the exact amount of indebtedness. Compared with the value of the entire tract, the consideration is grossly inadequate. The collateral agreement provides for a redemption within six months upon the payment of the debt and interest. These old negroes evidently believed that Kennedy, by virtue of the mortgage, could take their land, and were induced to execute the deed because they believed it gave them six months longer time within which to redeem the land. Thus there is present in this case every element which would ordinarily induce the court to adjudge a deed to be a mortgage. The deed was made to secure a debt. The grantors were left in possession. There is a collateral agreement permitting the redemption of the land on payment of the consideration with interest. The consideration is grossly inadequate, and the transaction therefore oppressive if the instrument

is held to be a deed. The only circumstance to the contrary is the fact that the grantee in the deed already had a mortgage on the premises. As before stated, however, this cannot have a conclusive effect on the case, for the reason that there was an additional inducement to get a deed growing out of the fact that the grantee got the whole tract instead of the two-ninths covered by the mortgage. While it is often difficult to determine the intention of the parties with reference to conveyances like that in question, yet it is a well-settled rule of equity that when a doubt exists as to whether a conveyance is a deed or a mortgage, that doubt should be resolved in favor of the debtor, and the conveyance construed to be a mortgage. Tygret v. Potter & Co., *supra.* The facts of this case are not sufficient to make it an exception to that rule. We, therefore, conclude that the chancellor properly adjudged the deed a mortgage.

Judgment affirmed.