## Charles, et al. v. Thacker, et al.

(Decided January 19, 1916.)

## Appeal from Pike Circuit Court.

1. Vendor and Purchaser—Conditional Sale.—Where land is sold with an option reserved to the vendor to repurchase it by the payment of a certain sum within a specified time, the transaction is known as a conditional sale, and will become absolute upon the failure to pay the stipulated sum at the time specified. In such a transaction, the vendor is not entitled to an equity of redemption, but can only enforce the agreement to resell if the payment is made, as required.

2. Vendor and Purchaser—Conditional Sale—When Mortgage.—Where the parties intend a conditional sale to operate as a security for a debt, equity will treat the transaction as a mortgage.

3. Vendor and Purchaser—Conditional Sale.—The test as to whether a transaction is a conditional sale or a mortgage is, that if the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage; but, if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of redemption, if he pleases, by a given time, and thereby entitles himself to a reconveyance, it is a conditional sale.

4. Vendor and Purchaser—Conditional Sale.—Where a mortgagor in possession conveyed the mortgaged land to the mortgagee by an absolute deed in payment of the mortgage debt, and the grantee in the deed gave the grantor a writing by which the grantee agreed to reconvey the property to the grantor upon the repayment of the purchase money within a year, and the grantee in the deed was put in possession of the land, and no claim was made by the grantor for more than seven years and until after the death of the grantee, that the transaction was a mortgage, equity will treat it as a conditional sale.

ROSCOE VANOVER for appellants.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

On January 9th, 1905, the appellees, Reuben Thacker and his wife, Pricy Victoria Thacker, executed a mortgage upon a small tract of land owned by Reuben to A. J. Charles to secure him in the payment of $900.00, due January 1st, 1906. The mortgage was the second renewal of a former mortgage between the same parties

upon the same tract of land, each renewal, however, being to secure additional loans of money. ·

Shortly after the note matured in January, 1906, Charles insisted upon its payment. According to the testimony of W. R. Justice, who heard the conversation between Charles and Thacker, Thacker wanted to make a new mortgage for a year, but Charles replied that he did not want any more mortgages; that he was getting old and frail and broken down, and something might happen to him; that he wanted his money or a deed for the land, or if that was not done, or some other suitable arrangement made, he would have to enforce his lien. ·

Justice testified that Thacker and wife did not want to make a deed, but wanted to give him a new mortgage. But this did not satisfy Charles, who finally agreed that if Thacker and wife would convey the land to him, he would give them a writing agreeing to permit them to buy the land back at any time before January 1st, 1907, upon the payment of the $1,000.00 purchase money. Thacker and wife accepted this proposition, and executed a deed to Charles for the land, for the recited consideration of $1,000.00 in cash, and Charles gave them a writing to the effect that they might "annul and avoid" the deed at any time before January 1st, 1907, upon the payment of the $1,000.00, and if that should not be done, then the writing giving them that right should stand "null and avoided."

Thacker and wife surrendered possession of the land to Charles, and he retained it until his death; and since his death his heirs have held possession of it.

On May 6th, 1913, Thacker and wife instituted this action in equity, against the children and grandchildren of Charles, claiming that the sale and the paper given them by A. J. Charles, above mentioned, was, in effect, a mortgage, and they asked that it be so adjudged.

The chancellor granted the prayer of the petition by declaring the deed from Thacker and wife to Charles to be a mortgage for the sum of $1,000.00, and directed a sale of the land to pay the debt. From that judgment the heirs of Charles prosecute this appeal. ··

Where land is sold with an option reserved to the vendor to repurchase it by the payment of a certain sum within a specified time, the sale is known as a conditional sale, and will become absolute upon the failure

to pay the stipulated sum at the time specified. The vendor in such a transaction is not entitled to an equity of redemption, but can only enforce the agreement to resell if the payment is made as required. A conditional sale may, in equity, be shown to be a mortgage upon the same principles as in the case of a deed absolute on its face. If it appears that the parties intended the conditional sale to operate as a security for the debt, equity will treat the transaction in all respects as a mortgage. The intention of the parties, as ascertained by considering their situation, and the surrounding facts, as well as the written memorials of the transaction, furnishes the criterion for the distinction.

Chancellor Kent states the test of distinction as follows:

"If the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage; but, if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of repayment, if he pleases, by a given time, and thereby entitles himself to a recognizance, it is a conditional sale." 4 Comm., 145.

The same rule was stated by this court in Honore v. Hutchings, 8 Bush, 695, as follows:

"The distinction between a conditional sale and a mortgage, as drawn by Greenleaf, is that 'where the debt forming the consideration of the conveyance still subsists, *or the money is advanced by way of loan,* with a personal liability on the part of the borrower to repay it, and by the terms of the agreement the land is to be reconveyed on payment of the money, it will be regarded as a mortgage; but, where the relation of debtor and creditor is extinguished, or never existed, there a similar agreement will be considered as merely a conditional sale.' (2 Greenleaf's Cruise, note 1, page 74)."

The true test, therefore, whether a conveyance is a mortgage or not, is to ascertain whether it is a security for the payment of money, or for the performance or non-performance of any act or thing. If the transaction resolves itself into a security, whatever be its form, it is, in equity, a mortgage. If it is not a security then it is either an absolute sale or a conditional purchase. If the debt is extinguished, leaving the grantor to pay or not, as he chooses, and thereby entitle himself to a re-

conveyance, the transaction operates as a conditional sale. Horbach v. Hill, 112 U. S., 144.

And it is a well settled rule of equity that when a doubt exists as to whether the writing is a sale or a mortgage, that doubt will be resolved in favor of the debtor, and the writing construed to be a mortgage. Tygret v. Potter & Co., 97 Ky., 57; Seiler v. Northern Bank of Kentucky, 86 Ky., 131; Allen v. Brown, 23 Ky. L. R., 217, 62 S. W., 726.

The rule upon this subject as laid down in 27 Cyc., 1003, reads as follows:

"The mere execution of a deed absolute on its face and of a bond for the reconveyance of the premises upon certain conditions does not of itself stamp the transaction as a mortgage. That character attaches to it only when it was intended as a form of security for a debt or loan. If it is shown that the parties intended an absolute sale of the property, with a mere right of repurchase, that intention must govern. Such intention may be manifested on the face of the papers, or inferred from circumstances. If the agreement for reconveyance expressly recites that the transaction is not intended as a mortgage, this is conclusive. In the absence of such a declaration, the test must be found in the character of the consideration. If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed of the land is to stand as security, the transaction is a mortgage; but, if it is entirely optional with the grantor to pay the money and receive a reconveyance or not to do so, he has not the rights of a mortgagor, but only a privilege of repurchasing the property. And if it appears that the deed was accepted in payment and satisfaction of an existing debt, the agreement for a reconveyance on payment of a given sum cannot convert it into a mortgage."

In Tygret v. Potter & Co., *supra,* where the facts were quite similar to the facts in the case now before us, the court said:

"In this case the appellees held a mortgage upon the entire premises conveyed at the time the deed was executed, that passed to the appellees all the right and title the appellant and his wife had in the land, as a security for the debt, and there could have been no motive prompting the parties to so change the terms of a writ-

ing that upon its face was plainly a mortgage, to an absolute conveyance, unless they both intended this conveyance to pass the absolute fee in the event the debt was not paid within twelve months, and at the end of that time the appellant to become the tenant of the appellees.

"The evidence of the debt had been surrendered, and there is no evidence conducing to show the land to be of greater value than that paid for it, or that the agreement was unconscionable or oppressive; but, on the contrary, it is manifest the appellant saw or believed he could not discharge or release the mortgage, and, therefore, made the best possible terms with his creditor; that was, to sell him the land, with the right to repurchase within twelve months, and if he failed to do so then to become his tenant."

See also Gassett v. Bogk, 7 Mont., 585, 1 L. R. A., 240.

In one respect, at least, the case at bar is stronger for the grantee in the deed than the Potter case, since in this case Thacker surrendered possession of the land to Charles, and for more than seven years he made no effort to repay the $1,000.00, and never claimed that the transaction constituted a mortgage.

The only question about which there could be any real doubt, relates to the value of the land at the time of the transaction. The presumption in favor of a conveyance, that it is what it purports to be, is strengthened when it appears there is no considerable disproportion between the price and the value of the property.

T. F. Justice, the deputy clerk who took the acknowledgment of Thacker and wife to the deed, Epp Justice, W. R. Justice, and A. J. Charles and Thacker and wife were present when the agreement was made; but only W. R. Justice and Reuben Thacker have testified.

The testimony of Thacker, in so far as it relates to conversations and transactions between himself and A. J. Charles, who was dead when Thacker testified, is incompetent, and will not be considered. Civil Code, section 606, subsection 2.

W. R. Justice testifies that Thacker told Charles his land was worth $2,000.00, but Charles insisted it was not worth over $1,000.00, the amount of the mortgage debt.

J. W. Ford, another disinterested witness, a neighbor and adjoining land owner, places the value of Thacker's

land at the time of the transaction at $1,000.00 or possibly $1,250.00.

It is true Thacker introduced four other witnesses, who valued the land at from $2,000.00 to $3,000.00; but it is evident from their testimony that their opinions are affected by the recent rise in land values in that section of the State.

We find it impossible to avoid the conclusion that at the time of the transaction the land in question would not have sold for more than $1,000.00 or $1,200.00, and that if Charles had enforced his mortgage lien the land in all probability, would not have sold for more than enough to pay his debt and interest and the costs of sale.

These facts, taken in connection with the delay of more than seven years in bringing this action, during which time Charles and his children were in the undisputed possession of the land, renders it too plain for doubt, that the transaction was a conditional sale, and that the contention that it was a mortgage is a mere afterthought.

There was no reason why Charles should take another mortgage. The one he held was the third mortgage in point of succession, and to take another mortgage would have accomplished nothing. Evidently, Charles had reached the conclusion that he could not safely lend a greater sum upon the land as security, and for that reason he insisted that a settlement be made.

Furthermore, Charles surrendered his debt, and there remained no obligation whatever upon the part of Thacker, to do anything.

Under the authorities above cited, these facts show, beyond a doubt, that the transaction was intended by the parties to be, and was, a conditional sale, and not a mortgage.

Judgment reversed, with instructions to dismiss the petition.