## White, et al. v. Nichols.

### (Decided May 20, 1919.)

### Appeal from Caldwell Circuit Court.

1. Sales—Conditional Sale.—The test whether a conveyance apparently absolute on its face is a conditional sale or mortgage is, that if the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of redemption by a given time, if he so elects, and thereby entitles himself to a reconveyance, it is a conditional sale.

2. Sales—Conditional Sale.—Evidence examined in this case and held sufficient to support the judgment of the chancellor that the instrument of writing attacked by the appellants, evidences and was intended as a conditional sale and not a mortgage.

R. W. LISANBY for appellants.

S. D. HODGE for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The question presented for decision in this case is, whether an instrument of writing purporting on its face to be a deed, should be declared a deed or mortgage. The appeal is from a judgment of the Caldwell circuit court declaring it a deed.

The action was brought against the appellee by the appellants, widow and seven children of Peter White, deceased, the widow suing as such; also as administratrix of the decedent's estate and statutory guardian of

five of the children, who are infants; the infants in their own right and by their statutory guardian, as heirs at law of the decedent. By the prayer of the petition the circuit court was asked to declare the instrument of writing in question a mortgage; compel the return by appellee to appellants of the possession of the sixty acres of land therein described, subject to the alleged lien given by the writing for the debt it was intended to secure; and also to compel of appellee an accounting for the rental value of the land during the several years of his possession thereof. In resistance of the relief sought by the petition the answer of appellee specifically denied its several averments, alleged the genuineness of the writing as a deed, the validity of appellee's title to the land it purports to convey and prayed that his title thereto be quieted. The affirmative matter of the answer was controverted by reply, thereby completing the issues. On the hearing in the court below appellants were refused the relief sought and their petition dismissed.

It appears from the record before us that the land in controversy was acquired by the decedent, Peter White, in December, 1887, by purchase and a deed of conveyance from one G. B. Kilebrew, the then owner, which deed was duly acknowledged and recorded. The purchase price was $700.00, of which amount $466.66 was cash in hand paid and for the remaining $233.33 White executed his note, payable one year after date, bearing six per cent interest from date, its payment secured by a vendor's lien retained upon the land by the deed. Payments were made on the note by White from time to time, but some time prior to 1909 it was assigned to one S. D. Baker, who brought suit thereon in the Caldwell circuit court and for the enforcement of the vendor's lien retained by the deed from Kilebrew to secure its payment. March 1, 1909, there was due on the note and owing by White $253.68, including balance of principal, interest and costs of the action brought by Baker. Being unable to pay the debt White attempted to borrow the amount thereof of the appellee, T. W. Nichols, who refused to make the loan, but offered to purchase of him the land by paying Baker's debt, take of him and wife a deed to same and permit them to retain and cultivate the land until the end of the year 1909. This offer was accepted by White, who, together with his wife, the appellant, Lula White, executed, acknowledged and delivered to appellee March 1, 1909,

a deed conveying him the land with covenant of general warranty. Appellee, upon receiving the deed, paid to Baker, through his attorneys, the $253.68 due him, which was followed by the dismissal of Baker's action. The check evidencing the payment to Baker of the amount due him appears in the record. Following the delivery of the deed to appellee, by a separate writing executed by him and then delivered to White, the latter was given the option, if exercised on or before January 1, 1910, to repurchase the land and take title thereto at the price of $302.00, by then paying appellee in cash one-half of the amount, $151.00, and executing to him his note for the remaining $151.00, payable one year after date, bearing six per cent interest from date and secured by a lien retained on the land; the writing further providing that if White failed by the first day of January, 1910, to avail himself of the option therein given, the writing should be null and void and he would on that date surrender the possession of the land to appellee.

White failed to avail himself of the option to repurchase the land given him by the writing, and did not, therefore, make the cash payment of $151,00, or give his note for the remaining $151:00 of the agreed consideration, but on January 1, 1910, removed from the land and surrendered it to appellee, who immediately took possession of same and has since continuously held such possession. Although the death of White did not occur until February 11, 1917, more than seven years after his surrender of the land to appellee, no complaint was made by him of the transaction by which the latter acquired it. The contention that the deed made him by White and wife March 1, 1909, was intended by the parties as a mortgage to secure as a loan the repayment to appellee of the $253.68, he paid in discharge of the Baker note, was first made by the widow and heirs at law in the petition instituting this action, which was filed May 23, 1917, about three months after White's death.

In our opinion their contention is not supported by the weight of the evidence. The only evidence tending to sustain it is found in the depositions of the appellant, Lula White, widow, and the appellants, Lena and Prince White, children of the decedent, and much of their testimony is incompetent, because evidently based on what admittedly took place between appellee and the decedent when the witnesses were not present. It is true the

widow claimed to have heard a part of a conversation between appellee and the decedent regarding the land after the latter had arranged with the former to have him pay the Baker lien debt, which conversation it was said occurred near the house when appellee called to view the land and from which she understood that although appellee had previously agreed with the decedent to pay for him the Baker debt and give him until the end of the year to redeem the land by repaying appellee the amount paid Baker and $50.00 in addition, he (appellee) claimed to have reached the conclusion that the decedent would have to pay him by the end of the year the still further sum of $50.00, in redemption of the land, making altogether $100.00, in excess of the debt appellee would have to pay Baker, to which demand the decedent at first demurred, but finally consented. She also testified that on the day she and the decedent went to Princeton to execute to appellee the deed conveying him the land, the latter in a conversation with them in the court house yard, before giving the decedent the separate writing mentioned in the pleadings, in substance told them he would not pay the Baker debt and thereby prevent the sale of the land, unless they would pay him $100.00 in addition to the Baker debt by the end of the year in redemption of the land, to which the witness said they agreed, as they had no other means of raising the money to prevent the sale of the land for the Baker debt.

The testimony of the widow as to what was said by appellee in the first conversation was corroborated by the deposition of one of the children who claimed to be present at the time, and as to what she claimed was said by appellee in Princeton, by that of the other child who claimed to be with his parents in that city on the day of the execution of the deed by them to appellee. We think it apparent, however, from the depositions of these three witnsses that they did not have a clear or dependable understanding or recollection of the facts connected with the transactions with respect to which they gave their depositions. We can better indicate the confused conception of the facts manifested by Lula White by referring to that part of her testimony regarding the amount due on the Baker lien debt when paid by appellee. This she fixed at $150.00, whereas it was admitted by the pleadings and shown by the check given Baker by appellee to be $253.68, including the cost of the action brought

by Baker. So if, as testified by the witness, appellee had exacted of the decedent a promise to pay him by the end of the year in redemption of the land $100.00 in addition to the amount of the Baker debt, as usury or a bonus, the total amount then payable by the decedent would have been $353.68, instead of $302.00, as expressed in the separate writing given by appellee to the decedent when he received of the latter the deed conveying him the land. Obviously, the presumption should be indulged that appellee knew whether the conveyance he received of the decedent was intended as a deed or mortgage, and that whatever amount the decedent agreed to pay him at the end of the year for the return or surrender to the latter of the land, should be truly expressed in the separate writing he gave him.

Other witnesses than those named were introduced in appellants' behalf, but their testimony throws no light on the essential issue involved in the case, as it relates altogether to the market value of the land and the question of rents to which reference will later be made in the opinion.

The evidence introduced in behalf of the appellee was mainly furnished by his own deposition and that of H. S. Hodge. The testimony of appellee is specific in its contradiction of that of the three appellants mentioned, and most positive in its denials of the statements attributed to him by them, to the effect that the amount paid in satisfaction of the Baker lien debt was a loan to the decedent, or that the latter was charged $100.00, or any other sum, for such loan. He also testified that when approached by the decedent for a loan to pay the Baker debt, he refused to grant it, but did, on March 1, 1909, purchase of the decedent the land at the amount of the Baker debt and then receive of him and wife an absolute conveyance by deed of the title, with the right to the decedent to remain on and cultivate the land until the end of the year; and that after receiving the deed and on the same day appellee agreed by a separate writing to give him the option if exercised on or before January 1, 1910, to purchase the land of appellee by then paying him $151.00 in cash and executing to him his note for a like amount payable one year after date, bearing interest from date and secured by a lien on the land; the writing further providing that if the decedent failed to avail himself of the option by the 1st day of January, 1910, it

should become null and void and he would on that date surrender to appellee the land.

The testimony of appellee was to the further effect that the decedent failed to exercise the option to purchase the land, and on January 1, 1910, voluntarily removed from the land and surrendered its possession to him; that at the time of his purchase of it the land was worth no more than he paid for it. Much of it was so full of gullies and sprouts as to render it worthless for cultivation, the barns and fencing were all gone, the dwelling house practically without a roof and otherwise so out of repair as to be unfit for use. The witness, Hodge, who is an aged and experienced lawyer, testified that he examined the deed conveying appellee the land, after it was acknowledged by the decedent and wife and then went to his office with all three of the parties and there drafted, at their request, the separate writing executed by appellee to the decedent, and after it was read by the witness and the parties found it satisfactory, it was delivered to the decedent by appellee in the witness' presence, who carried it away. Hodge testified that in language and meaning the writing in question was as stated by appellee and set forth in the latter's answer and that neither the decedent nor his wife claimed that the writing did not fully express the agreement of the parties, nor did either claim that the deed made appellee by them was intended as a mortgage.

The appellants who testified, though ruled to produce the writing given appellee by the decedent, failed to do so, claiming it had in some way unexplained been lost. But they admitted that they had seen it in the decedent's possession and saw him put it in a drawer and had since known nothing of its whereabouts. They did not deny that the contents of the writing were as testified by appellee and Hodge, and admitted they could read and had read the paper, but not carefully.

We are unable to find in the record any evidence that can be said to satisfactorily show that the deed or writing in question should be given any other meaning or legal effect than their language purports to convey. Moreover, the circumstances attending their execution and the transactions between the parties leading to their execution all tend to confirm the meaning expressed by their terms and the testimony of appellee and Hodge. It is patent that if appellee had desired to merely lend the de-

cedent the money to pay the Baker debt, his purchase of the note and its assignment to him would have carried with it the assignment of the vendor's lien, which would have given appellee as good security for what the decedent might have owed him, as would the taking of a mortgage from the latter on the land. While several witnesses for appellants fixed the market value of the land at from $500.00 to $700.00, and its rental value at from $75.00 to $150.00 per year, as many or a greater number of witnesses, landowners residing near the land, testifying for appellee placed its market value at $300.00 to $400.00, and its rental value at $35.00 to $50.00 per year. All the witnesses, however, agreed that the land is in a badly worn condition and though greatly improved by appellee that the larger part of it is still unfit for cultivation.

We think it fairly apparent from the evidence as a whole that the land when conveyed to appellee was worth very little, if any, more than the Baker debt of $253.68, and while under the writing then given him by appellee the decedent had until January 1, 1910, an option to repurchase the land at the price of $302.00, which was $50.00 more than appellee paid for it, the price was not unreasonable considering the fact that he retained possession of and cultivated the land until the end of the year, or for a period of nine months. So the additional $50.00 was not exorbitant as a charge for rent during that time.

We are of opinion that appellee's contention that the deed made him by the decedent and wife March 1, 1909, evidences and was intended by the parties to evidence a *bona fide* sale and conveyance to him of the land it describes, is established by the proof, and that the writing given the decedent by appellee on the same day contained a mere option to the former to purchase the land on or before January 1, 1910, upon the terms therein set forth, and his failure to avail himself of the option or make complaint of his loss of the land after surrendering it to appellee January 1, 1910, are circumstances that strongly sustain and confirm the appellee's present right to the land conveyed him by the deed from decedent and wife.

We therefore conclude that the transaction was a conditional sale, for whatever liability was imposed on the decedent by the appellee's payment of the Baker debt was extinguished by his conveyance of the land through the deed to appellee, and by the separate paper which the

latter executed to him on the same day. In Charles v. Thacker, 167 Ky. 383, it was held that "if the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage, but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of repayment, if he pleases, by a given time, and thereby entitles himself to a recognizance, it is a conditional sale." 4 Kent's Com. 145.

In the same opinion, in quoting from 3 Greenleaf's Cruise, note 1, page 74, it is further said: "The distinction between a conditional sale and a mortgage . . . is that where the debt forming the consideration of the conveyance still subsists, or the money is advanced by way of loan, with a personal liability on the part of the borrower to repay it, and by the terms of the agreement the land is to be reconveyed on payment of the money, it will be regarded as a mortgage, but where the relation of debtor and creditor is extinguished or never existed then a similar agreement will be considered as merely a conditional sale."

The rule thus stated is supported in the opinion by the following authorities: Tygret v. Potter & Co., 97 Ky. 57; Seiler v. Northern Bank of Ky., 86 Ky. 131; Allen v. Brown, 23 R. 217; Hornbach v. Hill, 112 U. S. 144, which are not in conflict with the cases relied on by counsel for appellant, as the latter rest upon facts unlike those here involved.

Judgment affirmed.