## Sutton v. Hardison.

(Decided December 12, 1919.)

### Appeal from Christian Circuit Court.

1. Mortgages—When Deed Will Not be Construed as Mortgage.—To secure the payment of money borrowed, appellant executed his note secured by mortgage; at a later date a further sum was borrowed from appellee and a second note and mortgage executed, canceling the first; upon the request of the borrower appellee satisfied a judgment for a sale of the property under a vendor's lien, in consideration of which the borrower executed a deed to the lender. Supplemental contract entered into between the parties on the same day as the deed, showing on its face it was intended as a conditional sale or option and not as a security for debt, will not be construed as a mortgage.

2. Sales—Conditional Sales—Forfeitures.—Where under a conditional sale executed just after the delivery of a deed by a borrower to the lender by the terms of which grantor is given the option to repurchase the property upon the performance of certain conditions and the payment of a given amount in a specified time, failure to comply with the conditions and to accept the option according to the contract, forfeits all rights of the borrower thereunder.

3. Sales—Conditional Sales—Construction.—Where it appears that the parties intended an instrument to act as a conditional sale it will be so construed and not as a mortgage. The intention of the parties as ascertained from their dealings and the surrounding facts, as well as the written memorials of their transaction, furnish the criterion for the distinction between a conditional sale and a mortgage.

THOMAS P. COOK for appellant.

C. H. BUSH for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Appellant (plaintiff below) borrowed from appellee in October, 1911, the sum of $900.00 and executed his note to the latter for $940.00, representing the amount

borrowed with interest, and to secure the payment of said note appellant and his wife on said date executed and delivered to appellee a mortgage on a tract of land then consisting of 416 acres.

January 20, 1912, appellant borrowed from appellee the further sum of $560.00. The first note and mortgage were cancelled and a new note secured by mortgage was executed for the sum of $1,620.00, the total amount borrowed, with interest at the rate of 8% per annum to maturity. The tract of land above mentioned was purchased by appellant from G. I. Rogers, and as a part of the consideration appellant assumed payment of two notes, aggregating $998.00, payable to Rogers' vendor, L. R. Davis, by whom they were assigned to the Planters' Bank & Trust Co. of Hopkinsville.

January 16, 1912, appellant, with the consent of the bank and appellee, sold to one Rideout 150 acres of the land, the proceeds of which were applied on the purchase price.

February 12, 1913, the bank brought suit on the two notes, asked the enforcement of the vendor's lien on the land and recovered a judgment for its debt, interest and costs.

At the time he took the mortgages appellee knew nothing of the vendor's lien on the property. The bank was about to sell the property under its judgment when appellant urged appellee to come to his rescue, to pay the bank its debt, interest and costs and take another mortgage on the property, but this appellee refused to do, stating he did not desire more mortgages, but if appellant would give him a deed to the property he would settle the bank debt.

Thereafter, to-wit, on March 24, 1913, appellant and wife executed and delivered to appellee a general warranty deed to the remaining 266 acres.

It is admitted by appellant that said instrument on its face is an absolute conveyance, but he insists it was intended and understood only as a mortgage to secure the amounts borrowed, with interest. Subsequent to the execution of said deed, but on the same day, the parties entered into a contract which recites, in substance, that appellee as the *owner* of the land agrees to convey same to appellant for $3,085.55 of which $900.00 to be paid in cash be-

fore January 1, 1914, the balance represented by notes, payable one-third each in one, two and three years at 8%, and upon payment of the cash and execution of the notes appellee was to execute a general warranty deed to appellant. Appellant was then in possession, and it is recited that in the event he failed to comply with these conditions he should be deemed a renter and pay appellee as rental one-third the crops raised during 1913. Appellant obligated himself to put a new roof on the residence. The contract contains other terms and conditions not necessary to mention, except that appellant was to deliver possession of the property to appellee January 1, 1914, if he did not exercise the option to purchase before said date.

February 11, 1914, the parties entered into another contract providing, among other things, that appellee had rented the farm to appellant for a consideration of $320.00 per year, and the payment of taxes for 1914 and 1915. Appellant agreed to erect a fence, clear some of the land, sow grass and clover seed on a stated acreage, to cover the barn, paint the dwelling and to execute a mortgage to appellee on the crops to secure the rent; that if appellant elected to purchase the farm during 1914 he could do so by the payment to appellee of the sum of $3,500.00 on or before January 1, 1915, upon payment of which amount appellee agreed to convey the farm to him, no credit to be given for the rent. If appellant complied with the terms of the contract, and paid the rent during 1914, he should have the right to remain on the premises during 1915; if he did not purchase the premises during 1914, and should elect to purchase same any time during 1915, he could do so upon the payment to appellee of the sum of $3,680.00; the rental for 1915, if it had been paid, to be credited on the purchase price, but if said purchase price was not paid, during 1915, appellant agreed to vacate the premises on or before January 1, 1916.

Appellant did not tender or pay to appellee any of the sums or rentals referred to, other than a portion of the proceeds of some of the crops, and he only partially performed other conditions of the contract relative to fencing and roofing the barn and dwelling. The barn was destroyed by fire, but the insurer being insolvent nothing was ever realized under the policy.

Appellant having declined to vacate the premises on January 1, 1916, appellee was compelled to resort to a writ of forcible detainer to evict him. He offered no resistance to said proceedings, and possession was thus secured by appellee. Thereafter this suit was instituted by appellant seeking to declare the instrument of March 24, 1913, to be a mortgage and not a deed. From an adverse judgment he has appealed. It is a well established rule in this jurisdiction that a deed absolute upon its face may be shown by parol evidence to have been intended as a mortgage and, contrary to the general rule, relief may be had in this state without an allegation of fraud, accident or mistake as a foundation therefor. Castillo v. McBeath, 162 Ky. 382, 172 S. W. 669; Carr v. Morrison, 178 Ky. 683, 199 S. W. 783.

It is said in Charles, et al. v. Thacker, 167 Ky. 835, 181 S. W. 611:

"Where the land is sold with an option reserved to the vendor to repurchase it by the payment of a certain sum within a specified time, the sale is known as a conditional sale, and will become absolute upon the failure to pay the stipulated sum at the time specified. The vendor in such a transaction is not entitled to an equity of redemption, but can only enforce the agreement to resell if the payment is made as required. A conditional sale may, in equity, be shown to be a mortgage upon the same principles as in the case of a deed absolute on its face. If it appears that the parties intended the conditional sale to operate as a security for the debt, equity will treat the transaction in all respects as a mortgage. The intention of the parties, as ascertained by considering their situation, and the surrounding facts, as well as the written memorials of the transaction, furnish the criterion for the distinction. . . .

"The true test, therefore, whether a conveyance is a mortgage or not, is to ascertain whether it is a security for the payment of money, or for the performance or non-performance of any act or thing. If the transaction resolves itself into a security, whatever be its form, it is, in equity, a mortgage. If it is not a security then it is either an absolute sale or a conditional purchase. If the debt is extinguished, leaving the grantor to pay or not, as he chooses, and thereby entitle himself to a

reconveyance, the transaction operates as a conditional sale. Horbach v. Hill, 112 U. S. 144.''

Where there is a doubt whether the writing is a mortgage or conditional sale, that construction will be adopted which is most favorable to the debtor and the instrument held to be a mortgage. Castillo v. McBeath, *supra;* Vaughan v. Smith, 148 Ky. 535, 146 S. W. 1094. The leading case in Kentucky on the subject of conditional sales is Tygret v. Potter & Co., 97 Ky. 57, the facts of which are almost identical to those of the instant case. Tygret being indebted to Potter executed to the latter his note secured by mortgage on real estate; Tygret being unable to pay the note, Potter & Co., purchased the land and surrendered the note. The deed contained the usual covenants as to title. At the time of the execution of the deed the parties entered into an agreement by the terms of which Tygret was given twelve months within which to pay Potter & Co. a stated sum, with 8% interest, upon payment of which amount Potter & Co. agreed to convey the land to Tygret. If the money was not so paid the contract was to have no binding effect, and if the amount specified was not paid by a stated time Potter & Co. agreed to rent the land to Tygret at a specified rental for the following year. Part of the land was sold during the life of the contract, and the rental on the balance was reduced. There was a verbal extension to enable Tygret to repurchase, but he did not comply with it, and after notice to surrender possession suit was brought to recover the rent and possession of the land.

The contention in that case being as here that the writing was a mortgage and not a conditional sale of the land and that usurious interest was charged.

In the course of its opinion the court says:

''In this case the appellees held a mortgage upon the entire premises conveyed at the time the deed was executed, that passed to the appellees all the right and title the appellant and his wife had in the land, as a security for the debt, and there could be no motive prompting the parties to so change the terms of a writing that upon its face was plainly a mortgage, to an absolute conveyance, unless they both intended this conveyance to pass the absolute fee in the event the debt was not paid

within twelve months, and at the end of that time the appellant to become the tenant of the appellees.

"The evidence of the debt had been surrendered, and there is no evidence conducing to show the land to be of greater value than that paid for it, or that the agreement was unconscionable or oppressive, but on the contrary it is manifest the appellant saw or believed he could not discharge or release the mortgage, and therefore made the best possible terms with his creditor; that was, to sell him the land, with the right to repurchase within twelve months, and if he failed to do so then to become his tenant."

This case has never been overruled. On the contrary, it has been cited with approval in several later cases, notably, Charles v. Thacker, *supra;* Carr v. Morrison, *supra;* White v. Nichols, 184 Ky. 335, 211 S. W. 849, in each of which cases similar documents were held to be conditional sales and not mortgages. In cases where the court has construed the instruments involved as mortgages the rule in Tygret v. Potter & Co. is clearly distinguished. Allen v. Brown, 23 Rep. 217; Castillo v. McBeath, *supra.*

In the present appeal, as in practically all similar cases, the contention is made that the property is of a much greater value than the amount paid by the lender. But an examination of the evidence convinces us that the 266 acres were not at the time of the transaction of a greater value than the amounts advanced by appellee, with legal interest.

Appellant's contention that the land is worth approximately $6,000.00, finds little support outside of his own family. On the question of value appellant introduced one man who fixed a valuation of $30.00 an acre on it, but this witness never owned any land and we find nothing in the record to show he is posted as to land values. Appellant placed the value at $25.00 an acre; his two sons say it is cheap at $3,500.00, while his only other witness says it was worth about $3,000.00. The value fixed by this latter witness is more in harmony with the weight of the evidence and with what we believe the fair valuation. Some witnesses for appellee put it as low as $2,000.00. Aside from various amounts paid by appellee for seed, etc., he paid to and for the account of appellant three principal items, viz.: $900.00 November 10, 1911;

$560.00 January 1, 1912; $1,278.37 March 24, 1913, the latter being the bank judgment, interest and costs. These three items with 6% interest from their several dates to January 1, 1916, aggregate $3,301.10.

Appellant contends he is entitled to certain credits, one of which is $881.50, the amount for which the fire loss on the barn was adjusted, but this could become a credit only when paid, and since no part of this loss has ever been settled, necessarily no credit can be allowed therefor. The other items are nominal amounts only; they are disputed, and even if each was proper would not substantially reduce the total indebtedness.

Several letters passed betwen the parties; December 15, 1915, appellant wrote appellee as follows:

"I have done all I can to get up your money for you and I find it impossible, and under our contract you are due possession the 1st of January, which seems hard to me, but I am now subject to your commands, so please let me know by return mail if you demand possession by the 1st of the year, so that I can make arrangements, to comply with your wishes."

This is rather conclusive that appellant then treated the contract as a conditional sale and not a mortgage as he now contends.

Appellant had abundant time in which to pay the amount due; he enjoyed the use of the premises until January 1, 1916; during all this time he paid nothing on the debt, nor did he comply with the provisions of the contract as to improvements, etc. It is manifest that appellee in his endeavor to assist and accommodate appellant made the first loan, likewise the second, and finding appellant unable to pay the indebtedness thus incurred, it was but natural appellee should refuse to execute a third mortgage, convinced as he must have been of appellant's inability to take care of his debts. Appellant had not previously mentioned the lien notes held by the bank, and notice of the judgment doubtless confirmed appellee in his determination not to advance further sums on mortgages. He agreed to pay off the judgment held by the bank upon the sole condition that he should receive an absolute deed. Having paid the bank and received the deed, and being desirous of giving appellant further opportunity to secure a reconveyance of the property, he executed the supplemental or conditional

contract of March, 1913. Whatever the status of the parties under the two mortgages their rights were merged in and fixed by the deed and by the later document the indebtedness was extinguished. The supplemental paper was a conditional sale, not a mortgage, and the evidence convinces us the parties did not intend it should operate as a security for debt.

The presiding judge being of counsel for one of the parties the case was, by agreement, heard by Hon. Joe McCarroll as special judge.

Satisfied as we are of the correctness of the judgment same is accordingly affirmed.