CASE 88.—ACTION BY J. C. DILTZ EXECUTOR AND OTHERS
AGAINST G. H. McKIBBEN.—June 9, 1910.

## McKibben v. Diltz, Exr. &c.

Appeal from Bracken Circuit Court.

C. D. NEWELL, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1. Infants—Contract.—Where an agreement was executed between the purchaser of property of an estate at a mortgage foreclosure sale and the representative of heirs, by which the heirs were permitted to repurchase without limitation as to time, upon paying the purchaser for his labor and attention, a subsequent modification, requiring the heirs to redeem within five years, would not bind infant heirs.

2. Trusts—Validity—Oral Agreement as to Lands to be Purchased at Judicial Sale.—An agreement by the purchaser of land at a judicial sale to allow the owner to redeem is enforceable, as a trust, though not in writing, even after the expiration of the time allowed thereby to redeem, and though the effect of enforcing the agreement changes an absolute deed into a mortgage.

3. Trusts—Purchase Under Agreement to Convey to Another—Conditions Precedent—Repayment of Price.—In order to enforce an oral agreement constituting a trust by the purchase at a judicial sale to allow the owner to redeem, the owner must pay the purchase price with interest and costs incurred.

4. Mortgages—Mortgage or Deed.—If agreement between the purchaser of land of an estate at a judicial sale and the heirs, of the judgment creditor, made before and after the sale, together with the surrounding circumstances, show that the purchaser was to hold the property in trust for the heirs with the privilege of redeeming, so that he only had a lien in the nature of a mortgage thereon, it will be so declared by the court, though a writing executed after the sale

expressly provided that the sale should be construed as absolute.

5    Mortgages—Sufficiency of Evidence—Nature of Transaction.— Evidence held to show that the purchaser of property of an estate at a mortgage foreclosure sale took title in trust for the heirs with a lien in the nature of a mortgage to secure to him payment of the purchase price with interest and for his services in managing the farm, and not that the transaction was an absolute sale of the land.

GEORGE DONIPHAN and HUMPHREY & HUMPHREY for appellant.

WORTHINGTON & COCHRAN for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

One Watson P. Diltz died in the year 1891 a resident of Bracken county, Ky. He left three children, one son and two daughters, all of whom were married and had children. He owned about 200 acres of land situated on the Ohio river adjacent to the town of Augusta. He left a will by which he gave to his children a life estate in his property with remainder in fee to the children of each, his grandchildren who were numerous and many of them infants. He appointed his son, J. C. Diltz, and his son-in-law, W. P. Coons, as his executors. By the third clause of the will he directed his executors to sell and convey a certain small parcel of his land and apply the proceeds on his debts. This piece of land contained about 17 acres, and was sold by the executors shortly after Diltz's death. The first clause of the will is as follows: "I will that my funeral expenses be paid and my debts according to contract. For the purpose of paying my debts I will that my executors, if necessary, rent the farm I own situated just above said town of Augusta, Kentucky, and same bought of

James Nichols and Maranda, for that purpose; but if my creditors are not willing to wait until the money to pay them can be raised in that manner, in that event I direct and endow my executors to borrow the money to pay them, by mortgaging said farm, and then to rent said farm until the debts are paid.''

Pursuant to this power to borrow and for the purpose of paying off the debts of decedent, the executors borrowed from John W. Bowman $5,000 on August 21, 1891, and executed to him a note due August 21, 1894, bearing 8 per cent. interest from date until paid. The executors executed to Bowman a mortgage on the balance of the land, about 182 acres, to secure the note. After the note fell due, Bowman brought an action in the circuit court to settle the estate of Diltz and to foreclose the mortgage. That suit was filed in May, 1896. The devisees of the testator were all made defendants. During the pendency of the action, Mrs. Coons, a daughter of the testator, died, and appellant, G. H. McKibben, qualified as her administrator, filed an answer as such and entered his appearance to the action. It appears that some of the devisees of the testator employed attorneys in that action for the purpose of putting in a defense of usury; that they had their answers prepared, but never filed them, having entered into an agreement, which will hereinafter be referred to, not to do so, and a judgment was rendered in the month of March, 1898, directing a sale of the farm to pay the mortgage debt and two legacies of $200 each with interest, and a few small debts which had been proved against the estate in the action. The total amount of the debts and legacies, including interest and estimated costs to the date of the sale, July 9, 1898, amounted to $7,059.95. The land was adjudged

to be indivisible without materially imparing its value and was ordered to be sold as a whole.    Appellant made the only bid at the sale that was made, and his bid was $7,059.95, the exact amount of the debts as above set out.    The property was sold to him, the sale reported to the court within a few days thereafter, which confirmed it, and ordered a deed made to appellant by the commissioner.    Within a day or two, and in compliance with an agreement made previous to the purchase by McKibben, the adult devisees of Diltz and McKibben signed and executed the following writing: "Augusta, Kentucky, July, 1898.    This agreement made and entered into by and between G. H. McKibben of Augusta, Bracken county, Kentucky, of the first part, and Ada D. Robbins, John W. Robbins, Lounora Robbins, Ella F. Robbins, Augusta Robbins, Eva Bauer, Kneodler Robbins, Mary L. Robbins, Addie Robbins, Joseph Robbins, J. C. Diltz, Clara L. Diltz, Jennie Mitchell, Diltz Mitchell, Mary Ella Mitchell, Edward Mitchell, Ada M. Coons, Bettie J. Coons, Louisa Coons, Samuel Boude & Lidia Boude, devisees of Watson P. Diltz, deceased, late of Bracken county, Kentucky, of the second part witnesseth: That whereas G. H. McKibben has pursuant to the order of sale made and entered in equity case No. 828, Bracken circuit court, wherein John W. Bowman is plaintiff, and Watson P. Diltz's executors and others are defendants, purchased the real estate therein and hereafter described, for the sum of —— and whereas he has had to mortgage the said premises for the full sum aforesaid, and whereas the said G. H. McKibben, while wishing fully to protect himself and to indemnify himself against all loss, damage, and expense, yet is willing to assist the said parties of the second part to repurchase said premises.    Now

he, the said G. H. McKibben, proposes as follows:

"(1) It is understood and agreed that this sale and purchase are absolute, and that the offers herein shall in no manner be understood or construed to create a mortgage or trust estate.

"(2) The sale being absolute, the said G. H. McKibben takes complete and absolute charge of the said premises, and all things pertaining thereto, farms, cultivates and manages the same as his best judgment dictates.

"(3) At any time within five years he offers to resell the said real estate to the parties of the second part for an amount equal to the amount for which the aforesaid mortgage is executed with interest thereon at 6 per cent. per annum, payable annually from the —— day of ——, 1898, until paid, all taxes insurance and all improvements, advancements and expenses whatever, including a reasonable annual allowance to said McKibben for his time, labor, trouble and attention, all of which shall, however, be subject to credit of all the rents, issues and profits, arising out of said realty, of all of which the said McKibben agrees to keep accurate account, which shall be conclusive against all parties.

"(4) Upon the acceptance and settlement on the basis set out in No. 3 the said McKibben agrees for himself, his representatives and assigns to convey the said real estate to the said parties of the second part by deed of special warranty in the proportions and manner set out in the will of the late Watson P. Diltz, probated at the July, 1891, term of the Bracken county court."

The above is all the agreement except a description of the property and the signatures of the parties. It appears that in the spring of the year 1903, and

McKibben v. Diltz Ex'r, et al.

prior to the expiration of the five-year time limit mentioned in the agreement, the devisees, realizing that they would not be able to meet the balance of the claim—about $6,400—at the time specified, began to look for some one who would take appellant's place, hold and conduct the farm for their benefit upon the terms stated in the aforesaid agreement, or some one who would purchase the land, pay all the claims against it, and pay the balance of the purchase price to them. It seems that they failed on the first proposition, but did find a person who agreed to give $9,000 in cash for the land, provided he could get a good title to it. He consulted a lawyer, who was one of the representatives of the Diltz devisees, and was advised that, as there were so many of the Diltz heirs under age, and who had not signed the agreement with McKibben, some of whom were still under age, a good title could not be obtained by purchase from the owners; that the safest and surest way to secure a good title was to have a friendly suit for the settlement of the estate and for a sale of the land by the master commissioner for the payment of the claims against it, and a division of the remaining proceeds after paying all debts among the devisees in the proportions fixed by the will. This fact was made known to appellant, and all the testimony shows that he apparently agreed to this, at least, his words and conduct were sufficient to lead all those in interest to believe that it was entirely agreeable with him, and that all he wanted was his money with interest and a reasonable compensation for his services, and this continued until October of that year, several months after this action was filed and the five years' limit mentioned in the agreement had expired. The first intimation that they had that he would undertake to

claim the land as his own, was in the month of October, 1903, when he appeared in court by counsel and moved the court to require appellees to verify their petition and also filed a general demurrer thereto. The first positive information to appellees that appellant claimed the land because they had not repurchased it within the five years, was received by them when appellant filed his answer in the month of January, 1904, wherein he asserted such a claim. In other words, he claimed that under the agreement with the heirs he was to convey the land to them upon condition that they would repurchase the land from him within five years from the date of the agreement, and that they had failed to do so, therefore the land was his. Appellees claimed that by reason of an oral agreement, made prior to the sale under the Bowman judgment and the subsequent written agreement, appellant became their trustee to take charge of the farm and manage it for their benefit; that he was to take the proceeds, pay the expenses of running the farm, his claim for the purchase price, with interest, and himself for his services; that, at most, he only held a mortgage lien for the payment of the things named. The issues were completed, the testimony taken and case tried which resulted in a judgment sustaining appellees' contention.

The testimony is voluminous, and we will not discuss it, in detail, as it would be of benefit to no one. It is shown, without contradiction, that there was an agreement made between appellant and J. W. Robbins, who married a daughter of the testator, and who acted for the heirs, whereby appellant was to purchase the land at the commissioner's sale made under the Bowman judgment, and this fact was made known to other persons who intended to bid

on it at the sale, and who did not attend and bid; therefore, appellant made the only offer, and that was the exact amount of the debts, $7,059.95, which was required to be made by the sale. Robbins and his son, A. Robbins, who aided him in making the agreement, testified that the terms of the agreement were in substance as set forth in appellees' pleadings and were, after the sale reduced to writing and are contained in the agreement heretofore copied. Appellant, in his testimony in chief, denied that he had any agreement with the heirs before or at the time of the sale, and stated that there was no agreement made until after the sale and that was contained in the writing. But on cross-examination he testified as follows: "Q. Were not the terms included in my former question agreed upon by all parties at the time you purchased this farm? A. Not all of them. Q. Well, what were not, and what were? A. The time for which this contract should run and continue was not named until afterwards, and that was named by Maj. Robbins himself. Q. Well, the other terms were understood at the time were they? A. Some of them, some were not. Q. State what was understood? A. That they should have a right to repurchase the farm by conforming to the terms of the agreement. Q. Well, what was the agreement? A. It is set forth in the paper. Q. I mean at the time you purchased the farm? A. I don't know how to make it more satisfactory than I have got it, sir—. Q. You say that at the time of the sale some of the terms were agreed upon and some were not, notably the time the contract should run was not agreed upon, you say; now tell me just what you had agreed to do at the time and before you purchased this property with Maj. Robbins? A. That

they should have an opportunity to repurchase the farm."

Thus we see, according to appellant's testimony, he had an agreement with the representative of the Diltz heirs prior. to the sale and at the time he took charge of the farm and ran it for the benefit of the heirs paying himself for his trouble, with the privilege on their part to purchase it without any time limit; that the time limit was inserted afterwards in the written contract at the instance of Maj. Robbins. This insertion, certainly, did not bind the infant heirs. It appears that this land was worth, at least, $11,000 at the time appellant purchased it. This court has repeatedly decided that when one purchases land at a judicial sale under an agreement with the owner to allow him to redeem, the agreement is enforceable, although not in writing. The purchaser holds the land in trust for the former owner, and therefore the statute of frauds presents no obstacle to a recovery. Although such agreement limits the time in which the owner is allowed to redeem, he will be allowed to redeem after the expiration of the time, it not being material. The original owner will, however, be required to pay the purchase price with interests and the costs which have been incurred. In the case of Fishback v. Green, etc., 87 Ky. 107, 7 S. W. 881, 9 Ky. Law Rep. 959, the court said: "An agreement by A. to bid in land at a sale and hold it subject to an agreement with the owner to redeem it is enforceable. It is not a sale by A., but he holds it in trust for the former owner. The statute of frauds, therefore, presents no obstacle to recovery in such a case. Martin v. Martin, 16 B. Mon. 8; Miller's Heirs v. Antle, 2 Bush, 407 [92 Am. Dec. 495]; Green v. Ball, 4 Bush, 586." See, also, the case of Shef-

field v. Day, 90 S. W. 545, and the authorities therein cited, which fully sustain the position that appellant took the entire title to the property under the deed from the commissioner in trust for appellees with a lien in the nature of a mortgage to secure him in the payment of the purchase price with its interest, and for his services in managing the farm for the benefit of appellees, and the other things mentioned in the written agreement herein copied. Appellant's counsel insist that the written agreement made between appellant and appellees amounts to a conditional sale and not a mortgage; that it is stated in the face of the writing, in effect, that appellant was not to be considered as a trustee for appellees and that the writing was not to be construed as a mortgage, and cite several cases in support of their contention. The first case is Prince v. Bearden, 1 A. K. Marsh. 169, which seemingly, at least in part, sustains them. In that case it appears that Prince purchased from Bearden a negro woman for the price of $300. Prince took possession of the woman. In the contract between them it was recited that if Bearden repaid that sum on or before the 1st of September, then ensuing, the sale should be void. It was also stated that the writing should be considered as a conditional sale and not a mortgage. As stated, Prince took possession of the woman and kept her for three years, when Bearden brought an action to have the contract declared a mortgage and to recover the woman with her children. The court declared it a conditional sale and defeated Bearden. That case is unlike this in many material particulars. Prince was not required under the contract to pay taxes on the woman as property or to clothe and feed her; nor was he to receive anything for his trouble in keeping her; nor

was he required to account to Bearden for the value
of her services or to keep an account and report any-
thing to Bearden.   It is unlike the case at bar, as in
the third section of the agreement in this case appel-
lant was to take possession of the farm and keep it
until he was repaid the purchase price with its inter-
est and pay all "taxes, insurance and for all improve-
ments, advancements and expenses whatever, includ-
ing a reasonable allowance to said McKibben for his
time, labor, trouble and attention, all of which shall,
however be subject to credit of all the rents, issues
and profits, arising out of said realty, of all of which
the said McKibben agrees to keep an accurate account
which shall be conclusive against all parties."   The
next case, Kenny v. Marsh, 2 A. K. Marsh. 46, is unlike
the case at bar.   In that case the agreement between
the parties was made after the purchase by Marsh at
the execution sale.   It does not appear that there was
any understanding or agreement between them with
reference thereto before Marsh became the purchas-
er.   He purchased it in his own right, and not with
any agreement that he was doing so for the owner.
The case of Honore v. Hutchings, 8 Bush, 687, was
where the parties purchased real estate in partner-
ship.   Hutchings furnished the whole of the pur-
chase price.   The writing between them stated
that upon a sale of the property, Hutchings was
to receive the money he paid with its interest and
the balance was to be divided equally between them,
provided the land was sold within 18 months, and
if it was not sold within that time, under the agree-
ment, Honore was to have no further interest in
it.   This court in that case held that notwithstand-
ing the terms of the writing, Honore was entitled
to his one-half interest after the purchase money

and its interest had been returned to Hutchings, although the sale of the land was not made until about eight years after the contract was executed. In the next case, Tygret v. Potter & Co., 97 Ky. 54, 29 S. W. 976, 16 Ky. Law Rep. 809, Tygret was indebted to Potter & Co. in a sum over $4,000. He executed to them his note payable in twelve months from date, and secured it by a mortgage on land. After the note matured, Tygret not being able to pay it, Potter & Co. purchased the land and surrendered the note, and Tygret executed an absolute deed to them, acknowledging the payment of the purchase money. Potter & Co. at the same time, executed to Tygret a writing in which they agreed to give Tygret 12 months from that date in which he was to have the privilege of paying them "the amount we this day paid him for certain lands this day deeded to us." Tygret failed to pay them within the time stipulated, and the court held that Tygret was not entitled to recover the land. The court refused to declare this last paper a mortgage. Potter & Co. held a mortgage in the first place and there could have been no reason for substituting one mortgage for another. It does not appear in that case that the purchase was made by Potter & Co. at an inadequate price. It seems that the transaction was open and fair. The last case cited —Tucker v. Witherbee, 130 Ky. 270, 113 S. W. 123— was where Tucker purchased a horse from Witherbee for $110, to secure the payment of which he executed to Witherbee a deed conveying to him a small piece of land. The deed is in the usual form with a clause of general warranty. The deed closes as follows: "It is further agreed by the parties hereto that said Tucker is to pay taxes due on said land for 1892, 1893, 1894, and recording fee of this deed. The

said Witherbee hereby agrees to hold said land for one year and a half and to sell same to Tucker at the end thereof, provided he shall then pay him cash $118.60, being purchase price hereof and necessary recording fee.'' Witherbee claimed in that case that the language expressed a conditional sale, and as Tucker did not pay the amount named within a year he lost all right to the land. This court determined the question against Witherbee, and declared that the transaction amounted to a mortgage only. This case supports the contention of appellee rather than militates against it. But appellant says that the writing in the case at bar executed between the parties after the sale, expressly provides that the purchase by appellant was to be regarded absolute, and that the provisions contained in the writing should not in any manner be understood or construed as a mortgage or a deed of trust. In our opinion, this language should have but little weight in construing the contract. If the agreement made by appellant with appellees prior to the sale made him a holder of the property in trust for the owners, and if the whole of the writing made after his purchase, connected with the surrounding facts and circumstances, show that he took it in trust when he made the purchase and that he only had a lien in the nature of a mortgage on the property, the court should so declare it, regardless of the fact that it is said in the writing that it should not be so construed. In the case of Edrington v. Harper, 3 J. J. Marsh, 353, 20 Am. Dec. 145, and Sheffield v. Day, 90 S. W. 545, this court said that whenever it—i. e., a deed— can be ascertained to be only a security for money, it is only a mortgage and will be so considered however artfully it may be disguised. In the case of Plummer v. Isle, 111 Am. St. Rep. 1003, note, it is

said: ''The mere form of an instrument cuts very little figure in respect to whether it is enforceable as a mortgage or not, upon its character being questioned in either a legal or equitable action. If its purpose is security, * * * the instrument is treated as a mortgage and nothing else.''

In the case of Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003, the court said: ''In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties.''

In the case of Stockton Saving Society v. Purvis, 112 Cal. 239, 44 Pac. 562, 53 Am. St. Rep. 212, the court said: ''There is nothing in the name given an instrument which will be in any way binding or controlling upon the court. Calling a contract a lease or a sale will not make it a lease or sale. The agreement, whatever it may be, when coming before a court, will be named according to its provisions, and any technical christening of it by the parties cannot control its true interpretation.''

In the case of Fleet v. Hertz, 94 Am. St. Rep. 234, note, the court said: ''It should first of all be remarked that the name parties have seen fit to give the transaction is of little or no importance in determining its true effect.''

In the recent case of Hobbs v. Rowland, 136 Ky. 197, 123 S. W. 1185, this court, after a full review of the authorities, decided that parol testimony might be introduced to show that a deed, absolute in its terms, was executed to secure a debt and therefore a mortgage, and overruled the case of Munford v. Green, 103 Ky. 140, 44 S. W. 419, 19 Ky. Law Rep. 1791.

There has been some conflict of opinions in Kentucky on this point, but there has never been any con-

flict on the question that when a purchase is made, not from the owner, but at a judicial or execution sale under an agreement that the owner might redeem, this agreement, although not in writing, is valid and enforceable, although the result would be to change a conveyance absolute on its face, into a mortgage or deed of trust.

In 20 Am. & Eng. Ency. of Law, 944, the following circumstances, amongst others are mentioned as important, indicating that a transaction is a mortgage and not a conditional sale: First, "the transaction originated in an application for a loan of money." The importance of this circumstance has been recognized by this court in Skinner v. Miller, 5 Litt. 84, and Perkins v. Drye, 3 Dana, 170. That circumstance exists in the present case. It appears from the testimony that appellees' commenced negotiations with appellant by requesting him to advance the money to pay off the debts, and then to manage the farm for them, and reimburse himself out of the income therefrom. Second, "the grantor was in embarrassed circumstances." That circumstance fits the present case. The land of appellees was about to be sold to pay the debts on it by a decree of the court, and appellees were unable to pay them. Third, "the price paid is inadequate;" i. e., less than the market value of the land. That circumstance exists in the case at bar. The land was worth $11,000 and the legal debts against it, including costs and interest and everything, was only about $7,000. Fourth, "the fact that after making the deed there is an accounting between the parties as if the vendor still had an interest in the property." In the case at bar accounts showing the receipts and disbursements of the farm were regularly rendered by appellant to appellees from the

beginning until after this action was instituted. Fifth, "the fact that a defeasance is executed simultaneously with, or as a part of the same transaction, is extremely indicative of a mortgage." Another circumstance existing in the present case which indicates that the transaction was a mortgage and not a conditional sale, i. e., the reconveyance was to be made for the identical same sum, with interest, that the seller paid for the property. Jones on Mortgages, sec. 278. Another is that the defeasance contract expressly provides that appellant should take possession of the property. If a sale was in the minds of the parties, why should mention be made that the purchaser should take possession? See Bright v. Wagle, 3 Dana, 252, in which the court said: "If the minds of the parties were not running upon a loan, and a mortgage, pledge, or lien upon the slave to secure it, why the introduction of this stipulation? If it were a sale, and so intended by the parties, no reasonable man could doubt but that the property and immediate possession thereof would pass to the vendee, without special stipulation to that effect."

Another circumstance indicating that the transaction was to secure the payment of money and not a conditional sale, is that by the terms of the writing the entire net proceeds of the farm for five years were to be credited on the price that appellees were to pay for it. When a man owns a farm and gives another an option to buy it at any time within five years for the same price he paid for it, it would seem strange that he should further agree that the entire income made by his own management should be applied to the payment of the purchase money.

For these reasons, the judgment of the lower court is affirmed.