## Miracle v. Stone.

(Decided February 25, 1921).

### Appeal from Bell Circuit Court.

1.   Sales—Conditional Sales.—Whether a transaction giving one, whose property is sold either by the execution of a deed himself or at public sale, the right to repurchase the property within a stipulated time upon stipulated conditions, is to be construed as a mortgage or a conditional sale is one primarily to be governed by the intention of the parties as gathered from all the admissible evidence in the case, and the fact that the conveyance to the vendee, who agreed to the reconveyance which creates the defeasance, is absolute in terms will not affect the nature of the transaction, provided it be, as measured by the legal rules for 'interpreting such transactions, a security for the payment of money.

2    Sales—Conditional Sales.—If the vendee in such a transaction is not a creditor of the vendor nor becomes such at the time, nor agrees to become one in the future, so that the relation of debtor and creditor does not exst between the parties, the transaction will be deemed a conditional sale and not a mortgage, and the same will be true notwithstanding the vendee holds a debt against the vendor if the transaction itself exinguishes that debt; neither will a mortgage be created unless the rights of the parties, as well as their remedies, be mutual, i. e., if the vendor may treat the transaction as a mortgage and not as a conditional sale, likewise the vendee should have the same rights and the same remedies, for

unless he may sue and recover of the vendor the amount agreed to be paid for the reconveyance and enforce his lien therefor, there are no reciprocal rights, in which case the transaction will be deemed a conditional sale and not a mortgage.

3.  Sales—Conditional Sales.—Under the facts of this case, as set out in the opinion, the transaction is held not to constitute a mortgage but only an option to repurchase which plaintiff could exercise or not at her pleasure.

N. R. PATTERSON for appellant.

JAMES M. GILBERT and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, Maggie Miracle Stone, owned a tract of land containing about seventy acres in Bell county, near the village of Page, which she had purchased from John Wesley Daniel. He brought suit in the Bell circuit court to enforce the collection of the balance of the purchase money amounting to $1,500.00. Mrs. Stone defended that suit and employed the law firm of Metcalfe & Jeffries to represent her, and their defenses were denied in the lower court and its judgment was affirmed on appeal to this court. The land was advertised for sale by the master commissioner of the Bell circuit court on February 7, 1916. On the day of the sale, and before it was made, John C. Buell, the father of Mrs. Stone, who once owned the land and at that time resided on it with his daughter, and who acted as the agent for his daughter throughout the litigation, approached the firm of attorneys to sign the sale bond of Mrs. Stone, if she should purchase the land from the commissioner, but they declined to do so. It was then agreed that one of the attorneys would bid at the sale and if he was the successful bidder, John C. Buell, or his daughter, Mrs. Stone, would be given the option to purchase the land upon payment of the bond with interest on or before its maturity, which was six months from that day. Accordingly, Mr. Jeffries, a member of the firm, attended the sale and made a bid of $1,-871.12, which was accepted by the commissioner, it being the highest bid, and he became the purchaser. Either before or just after the sale, Mr. Jeffries executed and delivered to Mr. Buell this writing, (caption, date and signature omitted):

"The undersigned, James H. Jeffries, of Pineville, Kentucky, having on this day with the consent of the de-

fendants purchased at master commissioner's sale in the above styled action the tract of land lying in Bell county, Kentucky, at the mouth of Hances creek, and fully mentioned and described in the petition and judgment in the above styled cause, to which reference is here and now had, at and for the sum of eighteen hundred, seventy-one and 12-100 dollars ($1,871.12), together with legal interest thereon from date until paid, and executed to L. K. Rice, master commissioner, a sale bond for the amount of said sale, payable in six months from this date:

"Now, therefore, this option witnesseth: That the said James H. Jeffries has agreed to and with the said Maggie Miracle Stone, that if she or her father, John C. Buell, or their assignees shall pay off and discharge the said sale bond of $1,871.12 and the interest thereon, on or before the date of maturing thereof, and pay on or before said date to the undersigned the additional sum of $200, then the undersigned will transfer his bid and purchase of said property to the defendants herein, or to their assigns, and cause same to be conveyed to the defendants, or their assigns by this court's commissioner."

It is not explained in the record why, but it appears that Jeffries paid the bond after the sale was confirmed and a deed was executed to him by the master commissioner, and on June 19, 1916, he wrote a letter to Mr. Buell calling his attention to the fact that the option would expire on August 7, thereafter, and that if he or his daughter desired to exercise the option they should be prepared to do so by that time or it would be too late. No response was received to that letter and Mr. Jeffries wrote Mr. Buell another one on July 21 thereafter, in which attention was called to the first letter and to the date of the expiration of the option, and in which it is stated, "Unless you arrange to repurchase the property or find a purchaser for it before your contract expires you will lose all right to do so, and I will be compelled to find a purchaser for the property." On August 5, following the last letter, Mr. Buell wrote Mr. Jeffries that he would be in Pineville on August 7 "to take up and settle the matter referred to by you." Jeffries was away from home at that time as well as on August 7, and Buell testified that he went to Pineville on that day but did not find Mr. Jeffries. He does not testify, however, that he was prepared on that day to make the payment stipulated in the bond. After Mr. Jeffries' return home and on Aug-

ust 11, he again wrote Mr. Buell saying: "I returned home this morning from my trip to Perry county, and I will arrange to be here Monday, August 14, when I suppose you will be back to town for the purpose of closing up the matter which you came down to see me about on last Monday." Jeffries testified that he saw Mr. Buell in Pineville on August 14, and that he stated that he was then trying to arrange for the money and would call on Mr. Jeffries at his office later in the day, but he never came and nothing more was said by him or Mrs. Stone about the matter either verbally or by letter. On the 17th of August, Jeffries sold the land to the appellant and defendant below, E. W. Miracle, for the sum of $2,150.00. On the 3rd day of November of the same year a writ of possession issued and defendant obtained possession thereunder.

On June 21, 1917, the plaintiff (appellee) brought this suit against defendant (Miracle) and in her petition she briefly stated the facts leading up to the sale of the land and set out *in hac verba* the writing copied above, and averred that the $200.00 mentioned therein was no part of the agreement, and she sought to repudiate the contract to that extent. She further alleged that the copied contract constituted Jeffries her trustee, and that he held the title to the tract of land in trust for her, and that the price he bid for it was grossly inadequate, and that she did not procure others to bid thereon because of the agreement with Jeffries; that defendant at the time of his purchase from Jeffries had actual knowledge of the nature of the latter's title and of his contract with plaintiff and was fully aware of the circumstances under which he purchased the land at the decretal sale, and she averred that she tendered and offered to pay into court the $1.871.12 with interest, but expressly denied the right of either Jeffries or the defendant to claim a lien on the land for the $200.00, or to collect from her any part of that sum as a condition precedent to her right to redeem. Further claims were made concerning rents and for waste committed by the defendant since he acquired possession. The answer denied the averments of the petition and asserted a claim for improvements, and upon trial, after proof heard, the court held that Jeffries was only a mortgagee of the land under his contract with plaintiff, and that defendant had knowledge of the facts at the time he made his purchase, and after settling the

issues as to rents, profits and improvements rendered judgment in favor of defendant for the sum of $2,500.00, and gave him a lien upon the land with the right to plaintiff to pay the judgment and to have a deed from defendant which he was directed to execute by a specified time and if he failed to do so the master commissioner of the court was ordered to execute one to the plaintiff upon payment of the judgment, otherwise the land was ordered sold. Complaining of that judgment the defendant prosecutes this appeal.

From the brief recitation of the facts which we have made it will be seen that plaintiff does not rely in her petition (as held by the court) that the transactions between her and her father on the one part, and Mr. Jeffries on the other, constituted a mortgage for the securing of a debt, although she seeks to establish her right to pay that debt and be adjudged the owner of the land. The only principle upon which she seeks to establish her title to or ownership of the land, is that Jeffries by the transactions referred to became her trustee and was vested with the title to the land only as such, and that under the arrangement she had with him the trust only lasted till she paid him the $1,871.12 and interest, at which time it would terminate and she seeks the right to do so by making that payment. The learned judge who tried the case did not rest his judgment upon any such theory, and we think correctly so. If the agreement between plaintiff and Jeffries, whether oral or in writing, had been to the effect that the latter would purchase the land for and on behalf of the plaintiff, thus constituting himself in fact and in law a trustee for her, there could be no doubt as to the existence of the relationship of trustee and *cestui qui trust*, but the written option heretofore copied discloses no such agreement, and it is the only agreement which plaintiff relies on in her petition, and the only one introduced or offered to be introduced in the proof, since neither plaintiff nor her father, or any other witness testified to any different transaction or facts than those embodied in that writing. Confining ourselves to it alone (as we are compelled to do under the state of the record) we find no room for the declaration of a trust.

Whether the court in this condition of the pleading was authorized to adjudge the transaction a mortgage, as was done, we will not attempt to determine, since the question is not presented or argued by either side, and

they have treated the case as though the court possessed such authority and which we will assume in disposing of the case.

This brings us, then, to the vital question involved, which is, whether the transaction, as evidenced by the copied writing, created the relationship of mortgagor and mortgagee, or was it only a conditional sale to become an absolute one upon the failure of plaintiff to make payment within the time agreed upon? We feel that we may safely say that there is no other single question upon which there is a greater diversity of opinion among the courts than the one now before us, as is evidenced by the 592 pages of annotation to the case of Mintz v. Soule, 1916B L. R. A., 15, from 182 Mich. 564. There are reported in the same volume just immediately preceding the Michigan case those of Hobbs v. Rowland, 136 Ky. 197; Johnson v. National Bank of Commerce of Tacoma, 65 Washington 261; and Morton v. Allen, 180 Ala. 279, which last three cases deal with the question here involved in some of its phases. On pages 87 and 222, of the annotation referred to, it is pointed out by the writer that the opinions of this court, beginning with the case of 'Reed v. Landsdale, Hardin 6, and extending to Castillo v. Macbeth, 162 Ky. 382, are perhaps as much at variance with each other as the opinions of the different states; at least they are so upon some one or more of the different phases of the question, such as the right to establish by parol evidence facts necessary to convert a writing, absolute on its face, into a mortgage; the presumption arising from the absolute quality of the transaction; whether it is necessary to admit such parol evidence that an allegation of fraud or mistake in the execution of the writing be alleged, and various other points incident to and growing out of the main question. But, a *resume* of our opinions, as well as foreign ones, will show that certain rules are practically agreed upon, among which are: that the question whether the transaction shall be construed as a mortgage, or a conditional sale, is one primarily to be determined by the intention of the parties to be gathered from such evidence as the record legally contains; that in case of doubt it should be resolved in favor of declaring the transaction a mortgage, but that in order to do so the relation of debtor and creditor must exist, and that the obligations of the parties must be mutual, i. e., that if the transaction be such as that the vendor

(debtor) may treat the transaction as a mortgage, so may the vendee, the alleged creditor. A few cases seem to deny the last two propositions, but none of them is from this court. Some of the numerous cases from this court (besides those above) wherein the question under consideration was involved in some of its phases are: Harrison v. Lee, 1 Litt. 191; Prince v. Veardon, 1 A. K. M. 169; Kenney v. Marsh, 2 A. K. M. 46; Flowers v. Sproule, *idem*, 54; Edmonton v. Harper, 3 J. J. M. 553; 20 A. M. Dec. 145; Honore v. Hutchins, 8 Bush 687; Allen v. Brown, 23 Ky. L. R. 217; Spicer v. Holbrook, *idem*, 1812; Fulwilder v. Roberts, 26 Ky. L. R. 297; Sheffield v. Day, 28 Ky. L. R. 754; Tigret v. Potter, 97 Ky. 54; Sebree v. Thompson, 126 Ky. 223; Tucker v. Witherbee, 130 Ky. 269; McKibben v. Diltz, 138 Ky. 684; Charles v. Thacker, 167 Ky. 835; Carr v. Morrison, 178 Ky. 683, and White v. Nicholason, 184 Ky. 335. Numerous others are cited in the ones referred to and in the annotation *supra*.

Manifestly it would be impossible in this opinion to examine each of the cases and to undertake to differentiate the facts of each or to reconcile the principles announced therein, since to do so would require the writing of a lengthy thesis upon the subject. Some of the questions presented, discussed and determined in many of them are not presented in this record, prominent among which are, when may parol testimony be received, and the effect to be given it? These questions are eliminated from the instant case, since (as we have seen) plaintiff plants her right to relief upon the written option contract, inserted above, and she neither introduced nor offered to introduce oral tsstimony affecting or modifying it in any particular. Clearly, there should be some decisive tests and distinctive characteristics fixing the line of demarcation for the guidance of the court in determining to what category a particular transaction belongs, so that the case could be readily classified and disposed of accordingly. Otherwise, each case would be determined by the peculiar notions of equity entertained by the court as constituted at the time it was decided, and the law on the subject would be void of that stability and fixedness so essential to its maintenance as a symmetrical science, and without which the law relating to the subject would degenerate into an utterly chaotic condition. Hence, we find many of the decisions, as well as text writers, announcing these de-

cisive tests to determine whether the transaction shall be treated as a mortgage or a conditional sale; (1) that to construe the transaction as creating a mortgage the relation of debtor and creditor must exist either because of a prior debt, or one simultaneously created, or one agreed to be created in the future; (2) to constitute a mortgage the transaction must be such as that the rights as well as the remedies of the parties are mutual, i. e., if the alleged mortgagee may treat the transaction as a mortgage and is possessed of all of the rights and remedies incident thereto, the vendor (the alleged mortgagee) must also possess the same rights and remedies. Growing out of this is the right of the latter to sue the alleged mortgagee to recover the debt and to enforce his lien upon the property involved. He can not do this unless there is contained in the transaction a promise by the mortgagee to pay him the stipulated sum on or before the fixed time, and in the absence of such a promise he can not maintain such suit and the mutuality of rights and remedies are wanting, and (3) even if the relation of debtor and creditor existed at the time of the transaction, if it extinguished the debt then that relation is destroyed and the sale may not be subsequently treated as a mortgage. There may be, under the peculiar facts of the particular case, other tests, but the three mentioned seem to be adopted by the greater number of courts and by the best reasoned opinions. Thus in 27 Cyc. 1008, the text says: "No conveyance can be a mortgage unless made for the purpose of securing the payment of a debt or the performance of a duty, either existing at the time of execution or to be created or to arise in the future. Hence a deed which is absolute in its terms can not be converted into a mortgage without proof of an obligation to be secured by it, either in the form of an antecedent debt between the parties, or a loan, debt, assumption of liability, or contract for future advances contemporaneously made." And on page 1003 it is further stated: "If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed of the land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance or not to do so, he has not the rights of a mortgagor, but only the privilege of repurchasing the property. And if it appears that the deed was accepted in payment and satisfaction for an existing debt, the

agreement for a reconveyance on payment of a given sum can not convert it into a mortgage." In 19 R. C. L. 266, supporting test (2), the text says:. .

"But in practice the line of demarcation between the two is shadowy, and it is frequently a matter of great difficulty to determine to which category a given transaction belongs. However, there is a test generally accepted as decisive, and this is the mutuality and reciprocity of the remedies of the parties—that is to say, if the grantee enjoys a right, reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage; while if he has no such right to compel payment, the transaction is a conditional sale. This test is a derivation of the consideration that personal liability of the grantor is regarded either as the *sine qua non* of a mortgage or as a factor whose existence or nonexistence points strongly to the fact that a conveyance is or it not a mortgage."

In the Tucker case *supra* from this court it is recognized that parties competent to contract "can agree upon terms that will amount to a conditional sale;" and the court recognized the necessity of the relation of debtor and creditor, since the opinion says: "But, where the instrument is intended as security for the payment of a debt, and the relation of debtor and creditor exists between the parties, the legal inference is that a mortgage, and not a conditional sale, was intended." And this result will follow although the instrument be absolute in form, provided the intention is to secure the payment of money, "and (says the court) the relation of debtor and creditor exists between the grantor and the grantee at the time of its execution. . . But, where no such relation exists, and the grantor and grantee at the time of the execution of the deed agree in writing that the grantor shall have the option to repurchase in a given time at a certain price, the transaction will be deemed a conditional sale." Further along in the opinion, the court, quoting from Honore v. Hutchins, *supra*, said: "The distinction between a conditional sale and a mortgage as drawn by Greenleaf is that 'where the debt forming the consideration of the conveyance still subsists, or the money is advanced by way of a loan with personal liability on the part of the borrower to repay it, and by the terms of the agreement the land is to be reconveyed on payment of the money, it will

be regarded as a mortgage; but, where the relation of debtor and creditor is extinguished, or never existed, there a similar agreement will be considered as merely a conditional sale." The same quotation from the Hutchins case was incorporated in the opinion in the case of Charles v. Thacker, *supra,* and in addition thereto the court in that opinion quoted and adopted from 4 Kent 145, thus: "If the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of repayment, if he pleases, by a given time, and thereby entitles himself to a recognizance, it is a conditional sale.' " Further along in the same opinion the court said: "The true test, therefore, whether a conveyance is a mortgage or not, is to ascertain whether it is a security for the payment of money, or for the performance or non-performance of any act or thing. If the transaction resolves itself into a security, whatever be its form, it is, in equity, a mortgage. If it is not a security then it is either an absolute sale or a conditional purchase. If the debt is extinguished, leaving the grantor to pay or not, as she chooses, and thereby entitle himself to a reconveyance, the transaction operates as a conditional sale. Horbach v. Hill, 112 U. S. 144." These same principles were approved in the late case of Carr v. Morrison, *supra,* and from them it would seem that this court in its later opinions has adopted the three distinctive tests enumerated above to guide it in placing the particular case under consideration in the proper category to which it rightfully belongs.

Perhaps the strongest case in favor of construing the transaction as a mortgage is that of McKibben v. Diltz, *supra,* but there appeared in that case many controlling facts and circumstances not appearing in the one now under consideration. The court there held that under the facts of that case McKibben, who purchased the land with the defeasance agreement, became a trustee for the rightful owners with the right in himself to operate the land until the defeasance period and then render an accounting according to the terms agreed upon, which, as stated, the court held created the relation of debtor and creditor.

Coming now to apply the above principles to the facts of this case we find that the only fact which might be construed as creating the relation of debtor and creditor

is the stipulation in the option contract for the payment of the $200.00 attorney's fee, but plaintiff in her petition renounces that stipulation and avers that it was no part of the agreement. On the contrary Mr. Jeffries refused to enter into that relationship when he declined to become surety for plaintiff on the sale bond to be executed by her should she purchase the land. If, however, we should take the opposite view and consider the case as if the relationship existed at the time then that item was extinguised upon the failure and refusal of plaintiff to exercise the option. Furthermore, the transaction here involved does not create a mutuality of obligations. Nowhere does it appear that plaintiff ever promised, orally or otherwise, to repay Jeffries any of the items mentioned in the option contract. That writing (which is the only contract involved, as we have seen) purported to and did only give her the option to repurchase the land at the sum designated therein and within the time stipulated which she could exercise or not at her pleasure. Neither do we think the alleged inadequacy of price (a circumstance sometimes considered in determining the intention of the parties and the nature of the transaction) should control our judgment under the facts of this case. Upon that issue, as is usually the case, the testimony is contradictory; some witnesses introduced by plaintiff fixed the price much higher than the bid of Mr. Jeffries, while an equal, or perhaps a greater, number of witnesses residing in the vicinity and who own land fixed the value at not exceeding $2,000.00. But, there appears in the record a very persuasive circumstance bearing upon the issue, which is that the same tract of land was sold three times within a comparatively short time at public sale and the highest price bid at any of the three sales was $2,250.00.

Measured by the above tests the transaction here involved can not be considered as a mortgage nor, as we have seen, did it create the relation of trustee and *cestui qui trust.* The court erred, therefore, in rendering the judgment appealed from and it is reversed with directions to dismiss the petition.