## Grigsby v. Draughn et al.

(Decided Dec. 17, 1935.)

T. E. MOORE, Jr., for appellant.

H. H. SMITH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Troy Draughn, a merchant, residing at Leburn, Knott county, Ky., owned a house and lot. Lewis Grigsby, at the time the transaction involved occurred, was a nonresident of Kentucky; Grover Gayheart resided at Leburn. Grigsby made arrangements with Grover Gayheart to purchase of Jane Draughn, the mother of Troy, a tract of land in Knott county, located near a house and lot of Troy. Gayheart approached Troy for the purpose of ascertaining whether he could purchase for Grigsby his mother's land, when he was informed that he (Troy) would sell his house and

lot to Grigsby and at the same time directed Gayheart to see his mother and make any trade they might agree on as to the farm. Thereupon, he approached Mrs. Draughn, when she informed him that she would sell Grigsby her farm at the price of $900; but finally agreed to accept $800 for it. Gayheart reported to Grigsby the result of his efforts to purchase the farm and informed him he could purchase Troy's house and lot. At that time, Troy owned the oil and gas rights on and under his mother's farm, he theretofore having deeded it to her, reserving and excepting the oil and gas thereunder. We find this stipulation in the record:

"It is agreed by both parties and their counsel hereto that the plaintiff (Troy Draughn) had good and fee simple title to the oil and gas at the time they executed the deed to Lewis Grigsby."

Soon after Gayheart notified Grigsby that he could purchase Troy's house and lot and Mrs. Draughn's farm for $1,200, Grigsby came to Leburn and discussed with Troy, apart from his mother, the purchase of his (Troy's) house and lot. Troy informed him that he would sell and convey it to him at the price of $400, and that he could see his mother and make his own trade with her for her farm, which he did, and so notified Troy. Troy was not present at the time Grigsby and Mrs. Draughn agreed on the price of her land, and the conditions and terms upon which she would convey it to him. Later, Grigsby suggested to Troy and Mrs. Draughn that to save expense they join in one deed, conveying Mrs. Draughn's farm and Troy's house and lot. They consented this be done. They met, with Mrs. Draughn's deed from Troy in their possession, to have prepared a deed conveying her farm and Troy's house and lot to Grigsby. The description of Mrs. Draughn's farm was obtained by the parties, and the draftsmen, from Troy's deed to her, and inserted in the Grigsby deed. Troy testified that after he signed the deed at the home of his mother he tried to sell to Grigsby his oil and gas rights on and under the land when Grigsby responded, "I will never get you paid for the surface, let alone the oil and gas." The Grigsby deed was acknowledged by the parties before Bolen Dyer, a deputy county court clerk. Dyer testified that at the time the grantors signed the Grigsby deed, in the presence and hearing of Grigsby, he inquired of Troy if he and his wife were selling the oil and gas rights,

when he stated, "they were not." Jane Draughn deposed that she informed Grigsby at the time she priced her land to him at $800 that she "would make him a deed to the surface; Troy owned the mineral." Also, at her home at the time the deed was signed and acknowledged by her, "Troy slapped him (Grigsby) on the knee and said: 'Let me sell you my oil and gas.' " Grigsby stated he could not buy it; he could not pay him for what he had already bought. Grigsby and Gayheart declared that at and during the negotiations of the trade, the execution, acknowledgment, and delivery of the deed, the subject of the oil and gas or mineral rights under Mrs. Draughn's land was neither discussed nor mentioned to them by any one or in their presence.

Troy Draughn filed this action to correct the deed executed and delivered by him and his mother to Grigsby in so far as it vested title in Grigsby to the oil and gas under the farm of Mrs. Draughn. The basis of his cause of action is, that "by mistake or oversight of both parties or by mistake of the plaintiff and fraud of the defendant, said minerals were not excepted in said deed"; that "the plaintiff did not sell and the defendant did not buy said mineral and the same was conveyed by the defendant by mistake and fraud as above stated."

Grigsby offered in his answer to rescind the deed. He is here insisting that "the court not only decline to do so, but made the contract between the parties for them, when such had not been made by the parties themselves."

No reply was filed to Grigsby's answer. The parties, their counsel, and the court treated the same as controverted; therefore, Grigsby's contention that no reply was filed, made for the first time in this court, as it appears from the record, comes too late. Hardin's Committee v. Shelman, 245 Ky. 508, 53 S. W. (2d) 923.

On submission for trial and judgment, the court decreed a reformation of Grigsby's deed, so as to exclude the oil and gas on and under Mrs. Draughn's farm as it is described in the deed.

It is true the rule is, "a deed will not be set aside on the ground of mutual mistake, unless the proof of the mistake is full, clear, and convincing." Farar v.

Eli et al., 195 Ky. 30, 241 S. W. 326. It is equally as well settled that "the right to avoid a contract on the ground of fraud, if the party defrauded elects to avoid, must be exercised in its entirety, but cannot elect to perform a part of the contract and avoid the remainder." 6 R. C. L. 936, sec. 318; Dolle v. Melrose Properties, Inc., 252 Ky. 482, 67 S. W. (2d) 706.

The evidence satisfactorily establishes there was no meeting of the minds of the parties at the time of the execution and delivery of the deed to Grigsby as to the oil and gas rights. The principles applicable and controlling the case are admirably expressed in Story's Equity Jurisprudence sec. 1381, as follows:

> "Where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into error or not sooner making redress, and no intervening rights have accrued and the parties may still be placed in statu quo, equity will interfere in its discretion to prevent intolerable injustice."

In Vinaird v. Bodkin's Adm'x, 254 Ky. 841, 72 S. W. (2d) 707, the facts are comparable to those in the present case. Therein we adopted and approved Story's principles. The same principles are aptly stated in a note to Hurst Motor Co. v. National Bond & Inv. Co., 96 Fla. 148, 117 So. 792, 59 A. L. R. 807. See Green et al. v. Collett, 231 Ky. 215, 21 S. W. (2d) 252; Miracle v. Stone, 190 Ky. 610, 227 S. W. 1011; Henderson v. Adams, 182 Ky. 280, 206 S. W. 461; McKibben v. Diltz' Ex'r, 138 Ky. 684, 128 S. W. 1082, 137 Am. St. Rep. 408; Bell v. Carroll, 212 Ky. 231, 278 S. W. 541; Board of Regents of Murray State Normal School v. Cole, 209 Ky. 761, 273 S. W. 508.

The deed of Troy to his mother was present at the time of the preparation of the Grigsby deed. Its presence at that time together with the information imparted to Grigsby by Troy's mother at the time, she agreed to sell and convey him the surface, without the oil and gas and that which was imparted to Grigsby by Troy at the time of signing the deed, coupled with the fact that Troy did not own the surface of his mother's

land, and only owned the house and lot, and executed a joint deed with his mother, to convey solely the title to the house and lot, are, in the circumstances, cumulative facts sufficient to establish that the minds of the parties did not meet as to the oil and gas under Mrs. Draughn's land, and that the deed was not intended by the grantors to convey, and it was not accepted by Grigsby for the purpose of conveying the oil and gas thereunder.

It is our view the court properly decreed a reformation of the deed.

Wherefore, the judgment is affirmed.